**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| SHARON BYCKO; ANGELA KILLMAN-ANDERSON; DEBRA LAWLESS; PAMELA S. NORTON; and JEREMY WALLER on behalf of themselves and all others similarly situated,<br><br>　　　　　　　　　　Plaintiffs,<br><br>v.<br><br>STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY; VERISK ANALYTICS, INC. d/b/a ISO CLAIMSEARCH; and INSURANCE SERVICES OFFICE, INC., a subsidiary of Verisk,<br><br>　　　　　　　　　　Defendants. | Civil Action No. _____<br><br>**NOTICE OF REMOVAL**<br><br>Removed from the Superior Court of New Jersey, Hudson County, Law Division<br><br>State Court Docket No: HUD-L-000537-24 |

　　　　**PLEASE TAKE NOTICE** that Defendants Verisk Analytics, Inc. d/b/a ISO ClaimSearch, and Insurance Services Office, Inc. (collectively, "Verisk") hereby remove this action from the Superior Court of New Jersey, Law Division, Hudson County, No. HUD-L-537-24, to the United States District Court for the District of New Jersey in accordance with 28 U.S.C. §§ 1332, 1441, 1446, 1453, and other applicable law.  In support of removal, Verisk states as follows:

I. <u>**Relevant Background**</u>[1]

    A. **Defendant State Farm Mutual Automobile Insurance Company Initially Removed this Action Based on the Plaintiffs' Allegations in the First Amended Complaint.**

1.    On January 20, 2023, Oklahoma Plaintiffs Sharon Bycko, Angela Killman-Anderson, Debra Lawless, Pamela S. Norton, and Jeremy Waller ("Plaintiffs") filed a putative class action complaint in the Superior Court of New Jersey, Law Division, Middlesex County, against Verisk and Defendant State Farm Mutual Automobile Insurance Company ("State Farm"). Plaintiffs thereafter filed the First Amended Complaint ("FAC") that was substantively identical to the original complaint. Plaintiffs filed a Second Amended Complaint ("SAC") on July 22, 2024. *See* Ex. A

2.    Based on the FAC's allegations, State Farm timely removed this action to the United States District Court for the District of New Jersey on March 8, 2023 pursuant to the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. § 1332(d).

3.    Plaintiffs alleged in the FAC that "[w]hen a person is injured in an automobile accident and makes a claim for personal injuries, State Farm and other insurers potentially liable to pay the claim are entitled to request and review medical records to evaluate the claim and the alleged injuries." FAC ¶ 20. "The medical records include Private Information (e.g., medical records, medical bills, diagnostic tests, lost income records, financial account information, etc.)." *Id.*

---

[1] "[A] defendant seeking to remove a case to a federal court must file in the federal forum a notice of removal 'containing a short and plain statement of the grounds for removal.'" *Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 87 (2014) (quoting 28 U.S.C. § 1446(a)). "By design, § 1446(a) tracks the general pleading requirement stated in Rule 8(a) of the Federal Rules of Civil Procedure." *Id.* "Accordingly, '[a] statement 'short and plain' need not contain evidentiary submissions." *Id.* at 84.

4.      Plaintiffs alleged that State Farm improperly transmitted their Private Information to Verisk without their consent and in breach of the "express and implied terms of [State Farm's] insurance contract with them." *See id.* ¶¶ 51, 69.

5.      Plaintiffs contended that Verisk in turn "compiles Plaintiffs' Private Information in a database that is analyzed, and the results are regularly sold to companies, governmental agencies, and individuals around the world for a wide range of reasons having nothing to do with adjusting the claim of the person whose Private Information is being sold." *Id.* ¶ 19. Plaintiffs asserted that "the inclusion of Plaintiffs' and Class Members' Private Information in [Verisk's] databases is analogous to the publication of that information in a periodical – available to anyone willing to pay the price to access the database." *Id.*

6.      Based on the foregoing, the FAC asserted claims for (1) Invasion of Privacy – Publicity Given to Private Life; (2) Invasion of Privacy – Intrusion Upon Seclusion; (3) Breach of Contract; and (4) Breach of Fiduciary Duty.

7.      Plaintiffs sought to certify the following General Class and subclasses:

a.      GENERAL CLASS. Any person who initiated at least one insurance claim under a policy provided by an insurer licensed by the State of Oklahoma to sell the policy under which the claim was made, and regarding whom State Farm submitted Private Information to Verisk / ISO which Private Information was maintained in Verisk / ISO's database at least as recently as the start of the Class Period.

b.      THIRD-PARTY SUBCLASS. A General Class member who made at least one third-party insurance claim regarding an Oklahoma-based insurance policy issued by State Farm.

c.      FIRST PARTY SUBCLASS. A General Class member who made at least one first-party insurance claim regarding an Oklahoma-based insurance policy issued by State Farm.

*Id.* ¶ 36.

8. Following removal, Plaintiffs did not contest that these allegations conferred jurisdiction under CAFA.

**B.  The Court Remanded this Action because the First Amended Complaint Did Not Contain Sufficient Allegations to Establish Article III Standing.**

9. Following removal, State Farm and Verisk separately filed motions to dismiss the FAC. Plaintiffs opposed those motions, but also moved to remand this action back to the Superior Court of New Jersey.

10. On November 9, 2023, the District Court granted the Motion to Remand and denied the Motions to Dismiss as moot. The Court held that the FAC's allegations "lack the basic foundational information necessary to establish that Plaintiffs have standing." No. 23-cv-1316, Op., at 4, ECF No. 57. Specifically, the Court found that the FAC "is devoid of any information as to what allegedly confidential information of Plaintiffs was accessed, or by whom, or of any purported harm sustained by Plaintiffs." *Id.* The Court further found that "Plaintiffs fail to show that any of their confidential information was sent from State Farm to Verisk or that Verisk ultimately sold this information to any third party." *Id.* The Court also concluded that the FAC "fails to allege any harm that stemmed from this disclosure, outside of speculative injuries that might materialize in the future." *Id.* The Court emphasized that Plaintiffs conceded that they lacked Article III standing. *See id.*

11. With respect to Plaintiffs' invasion of privacy claims, the Court concluded that Article III's injury-in-fact requirement necessitated Plaintiffs: (1) "allege that their information was in fact disclosed to Verisk or any other third part[y]"; (2) "specify what information, confidential or otherwise, which may have been disseminated or the parties to whom Verisk allegedly sold it"; and (3) assert a "particularized concrete injury or harm to any Plaintiff[]" that was not "speculative." *Id.* at 11-13. With respect to Plaintiff's breach of contract claim against

State Farm, the Court held that Article III standing requires pleading an "injury stemming from an alleged breach." *Id.* at 15.[2]

### C. Subsequent Developments in the Superior Court of New Jersey.

12.    Following remand, the Superior Court of New Jersey transferred this action from Middlesex County to Hudson County pursuant to a proposed Consent Order submitted by the parties. *See* Order (stating that "the Parties . . . agreed to the transfer of this action to Hudson County given that Verisk maintains its principal place of business in Hudson County, State Farm has no principal place of business in New Jersey, and no Plaintiff resides in New Jersey"; and ordering the transfer of the action to Hudson County "for the convenience of the parties and witnesses in the interest of justice").

---

[2] In opposition to the Motion to Remand, Verisk argued that there was subject matter jurisdiction over the class action because at least one Plaintiff had Article III standing to assert a breach of contract claim against State Farm. *See* No. 23-cv-1316, Verisk's Mem. in Opp'n to Pls.' Mot. to Remand, ECF No. 46; *see also Rumsfeld v. Forum for Acad. & Institutional Rts., Inc.*, 547 U.S. 47, 52 n.2 (2006) (noting that "the presence of one party with standing is sufficient to satisfy Article III's case-or-controversy requirement"); *Neale v. Volvo Cars of N. Am., LLC*, 794 F.3d 353, 359, 369 (3d Cir. 2015) ("[S]o long as a named class representative has standing, a class action presents a valid 'case or controversy' under Article III."). With respect to the invasion of privacy claims, Verisk argued that dismissal—not remand—was the procedurally proper outcome pursuant to 28 U.S.C. § 1447(c). The remand statute does not permit partial remands where there is jurisdiction based on some, but not all, of the claims asserted in a case. *See* No. 23-cv-1316, Opp'n to Pls.' Mot. to Remand, ECF No. 46; *see also Wisconsin Dep't of Corr. v. Schacht*, 524 U.S. 381, 391-92 (1998) ("An ordinary reading of [28 U.S.C. § 1447(c)'s] language indicates that the statute refers to an instance in which a federal court 'lacks subject matter jurisdiction' over a 'case,' and not simply over one claim within a case."); *City of Almaty, Kazakhstan v. Ablyazov*, No. 15-cv-5345, 2021 WL 1180058, at *6 (S.D.N.Y. Mar. 29, 2021) (holding that "§ 1447(c) contemplates remand of an entire case, not of individual claims for which jurisdiction is lacking"); *Parker v. Fed. Highway Admin.*, No. 22-cv-291, 2022 WL 17103830, at *3 (S.D. Ind. Nov. 21, 2022) (holding that "a 'partial remand' is not contemplated by [28 U.S.C. § 1447(c)" and that "the Court must either (1) remand the entire case or (2) dismiss claims over which the Court lacks subject matter jurisdiction"). The Court did not reach that argument because it concluded from the FAC's allegations that Plaintiffs lacked standing to assert a breach of contract claim.

ME1 52076540v.1

13.    Defendants thereafter moved to dismiss the FAC under New Jersey State Court Rule 4:6-2(e) on the basis of, *inter alia*, lack of standing. In opposition, Plaintiffs insisted that although "Defendants had failed to sustain the burden of proof incumbent upon them as the party removing this matter from State court to establish Article III standing," that "the allegations in the [FAC] are sufficient to sustain standing in New Jersey State Court." Pl.'s Opp'n to Verisk's Motion to Dismiss.

14.    On July 3, 2024, the state court denied Defendants' motions to dismiss.

15.    On July 22, 2024, Plaintiffs filed the SAC, which did not contain any new allegations sufficient to establish Article III standing under the Court's prior ruling.

**D. Plaintiffs' Responses to Verisk's Written Discovery Requests.**

16.    Verisk served its First Set of Interrogatories, First Set of Requests for the Production of Documents and First Set of Requests for Admission on November 27, 2024.

17.    Plaintiffs served "unified" responses and objections to Verisk's written discovery requests on January 10, 2025, and then "individualized" responses and objections to Verisk's written discovery requests on January 24, 2025.[3]

18.    Plaintiffs' discovery responses establish that they have Article III standing, and thus, render this action removable.

19.    In responses to Requests for Admission, Plaintiffs "admit" that they provided (1) "Non-public personal information" ("NPPI"); (2) "Individually Identifiable Health Information" ("IIHI"); and (3) their Social Security numbers ("SSN") to State Farm in connection with a claim for benefits under an insurance policy during the Class Period. *See* Pls.' Resp. to Verisk's RFA

---

[3] As of the date of this removal, Plaintiffs have not served any responsive documents to the Requests for Production or Interrogatories. Defendants reserve the right to amend this Notice of Removal upon Plaintiffs' production of any documents.

Nos. 1-3. In turn, Plaintiffs "assert" that Verisk disclosed their NPPI, IIHI, and SSN to a third

party. Pls.' Unified Resp. to Verisk's RFA Nos. 7-9.

20.    Plaintiffs further "assert" that they suffered a "privacy harm[]" and "injury to [their]

reputation" "as a result of Verisk's alleged disclosure of [their] Private Information." Pls.' Unified

Resp. to Verisk's RFA Nos. 10-11.

21.    Plaintiffs "admit" that they "suffered embarrassment, humiliation, or emotional

distress as a result of Verisk's alleged disclosure of [their] Private Information." Pls.' Unified

Resp. to Verisk's RFA No. 12. Specifically, Plaintiffs "admit" that

> Plaintiffs have regularly spent time scrutinizing bank statements, credit card
> records, and credit ratings for any signs of identity theft, fraud, or data breaches.
> Plaintiffs are worried that the personal information will be sold by Verisk / ISO or
> otherwise provided to insurance companies or other companies who will charge
> them more money for policies, deny them coverage, pay less on future claims,
> provide them credit on less favorable terms or not at all, or otherwise hurt them by
> wrongly using their own personal information to which they have no rights.
> Emotional Distress: The knowledge that their personal information is in the
> possession of unauthorized parties who are currently offering it for sale to unknown
> persons is deeply upsetting. It feels like a violation of their privacy and personal
> security. This situation is especially distressing as Plaintiffs suspect that their
> Private Information was been submitted to Verisk / ISO by State Farm as a punitive
> action, to punish them for filing a personal injury claim, even though the accident
> was not their fault. Uncertainty and Anxiety: The uncertainty regarding who now
> possesses their personal data and what they might do with it is a constant source of
> anxiety and concern to Plaintiffs.

22.    Plaintiffs "admit" that they "have suffered financial harm as a result of Verisk's

alleged disclosure of [their] Private Information." Pls.' Unified Resp. to Verisk's RFA No. 13. In

their admission, Plaintiffs assert that

> Verisk should have offered to pay Plaintiffs for their personal information, and they
> lost the opportunity to profit when it failed to do so. Future Harm: Plaintiffs'
> information being possessed and offered for sale is then being used to increase their
> insurance rates or even to deny coverage. Should Plaintiffs assert future insurance
> claims, their justified and proper past claims could be used as a basis to deny future
> claims or to reduce any payment associated with future claims. These very harms
> are suffered every day by insureds, and Plaintiffs believe that they may already

suffered such harms when they renewed my insurance after claims were reported to by State Farm to Verisk.

23.     Plaintiffs "admit" that they "have suffered 'economic damages,'" and 'at least nominal damages." Pls.' Unified Resp. to Verisk's RFA No. 14-15.

24.     To the extent that they have made subsequent claims, Plaintiffs "admit" that their "legitimate [insurance] claims were the improper bases for second-guessing subsequent claims." Pls.' Unified Resp. to Verisk's RFA No. 16.

25.     Plaintiffs "admit" that their "policy premiums were increased" "as a result of Verisk's alleged exposure of [their] Private Information." Pls.' Unified Resp. to Verisk's RFA No. 17.

26.     Plaintiffs "admit" that they have been "denied or charged higher prices for insurance" "as a result of Verisk's alleged exposure of [their] Private Information." Pls.' Unified Resp. to Verisk's RFA No. 18. Plaintiff Waller asserts, for example, that "he had a difficult time obtaining insurance [in 2024], and [that] he believes that the difficulty obtaining insurance was caused, at least in part, by the information Defendants made available about him via Verisk / ISO's databases." Pl. Waller's Specific Resp. to Interrogatory No. 15.

27.     ISO assigns a specific file number for claims submitted by participating insurers for inclusion in ISO ClaimSearch. Plaintiffs identify numerous ISO File Numbers in their Specific Responses to Interrogatory No. 12. For example, Plaintiff Sharon Bycko identifies an automobile accident for which she submitted a claim for benefits associated with "property damage, loss of use and bodily injury" against a State Farm insured. Plaintiff Angela Killman-Anderson identifies an automobile accident for which she submitted a claim for benefits associated with "property damage, loss of use and bodily injury" against a State Farm insured. Plaintiff Debra Lawless identifies "an underinsured motor claim made to Plaintiff's insurance State Farm." Plaintiff Jeremy

8

Waller identifies "a 'claim' purportedly made by his wife . . . on his ISO report" that was "secured by his counsel." *See* Pls.' Specific Responses to Interrogatory No. 12. Plaintiffs contend that State Farm furnished this claim information to Verisk, and that Verisk maintains this information in ISO ClaimSearch as evidenced by the ISO File Numbers associated with those claims.

## II.    Plaintiffs Have Article III Standing[4]

28.       "For there to be a case or controversy under Article III, the plaintiff must have a 'personal stake' in the case—in other words, standing." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021) (quoting *Raines v. Byrd*, 521 U.S. 811, 819 (1997)). "Article III standing requires a plaintiff to demonstrate: '(1) that he or she suffered an injury in fact that is concrete, particularized, and actual or imminent, (2) that the injury was caused by the defendant, and (3) that the injury would likely be redressed by the requested judicial relief.'" *Clemens v. ExecuPharm Inc.*, 48 F.4th 146, 152 (3d Cir. 2022) (quoting *Thole v. U.S. Bank N.A.*, 140 S. Ct. 1615, 1618 (2020)).

29.       "[C]ertain harms readily qualify as concrete injuries under Article III." *TransUnion*, 594 U.S. at 425. "The most obvious are traditional tangible harms, such as physical harms and monetary harms." *Id.* "If a defendant has caused physical or monetary injury to the plaintiff, the plaintiff has suffered a concrete injury in fact under Article III." *Id.*

30.       Plaintiffs have admitted that they have suffered tangible harms that constitute "concrete" injuries for purposes of Article III standing. Plaintiffs admit that they have suffered

---

[4] When assessing whether a party has Article III standing, the Court must "separate [its] standing inquiry from any assessment of the merits of the plaintiff's claim," and "assume for the purposes of [its] standing inquiry that a plaintiff has stated valid legal claims." *Weichsel v. JP Morgan Chase Bank, N.A.*, 65 F.4th 105, 111 (3d Cir. 2023) (quoting *Cottrell v. Alcon Lab'ys*, 874 F.3d 154, 162 (3d Cir. 2017)). Verisk strenuously opposes Plaintiffs' claims on their merits, but assumes their validity of their claims for the limited purpose of showing Article III standing.

"financial harm" and "economic damages," including increased policy premiums, higher prices, and denied coverage. *Cottrell v. Alcon Lab'ys*, 874 F.3d 154, 163 (3d Cir. 2017) ("[W]here a plaintiff alleges financial harm, standing 'is often assumed without discussion.'" (quoting *Danvers Motor Co., Inc. v. Ford Motor Co.*, 432 F.3d 286, 293 (3d Cir. 2005)); *see also Czyzewski v. Jevic Holding Corp.*, 580 U.S. 451, 4648 (2017) ("For standing purposes, a loss of even a small amount of money is ordinarily an 'injury.'"); *Carter v. HealthPort Techs., LLC*, 822 F.3d 47, 55 (2d Cir. 2016) ("Any monetary loss suffered by the plaintiff satisfies [the injury-in-fact] element[.]").

31.    Plaintiffs also "admit" that they "have suffered . . . 'at least nominal damages,'" which indicates that Plaintiffs contend that they have suffered at least some economic injury for which they seek redress. "[N]ominal damages are no less 'concrete' than compensatory damages." *Perficient, Inc. v. Munley*, 43 F.4th 887, 890 (8th Cir. 2022).

32.    Intangible harms also qualify as concrete injuries. "Those include, for example, reputational harms, disclosure of private information, and intrusion upon seclusion." *TransUnion*, 594 U.S. at 425. In addition, "'unauthorized *disclosures* of information' have long been seen as injurious." *In re Horizon Healthcare Servs. Inc. Data Breach Litig.*, 846 F.3d 625, 638 (3d Cir. 2017) (emphasis in original) (quoting *In re Nickelodeon Consumer Privacy Litig.*, 827 F.3d 262, 274 (3d Cir. 2016)). "[W]ith privacy torts, improper dissemination of information can itself constitute a cognizable injury." *Id.* at 638-39.

33.    Plaintiffs have admitted that they have suffered intangible harms that constitute "concrete" injuries for Article III standing. Specifically, Plaintiffs admit that they have suffered "embarrassment" and "emotional distress" as a result of the alleged invasion of privacy. Plaintiffs also assert reputational injuries, which they allege have manifested in the form of second-guessed insurance claims, increased premiums, and denied coverage. *See Walters v. Fast AC, LLC*, 60 F.4th

10

642, 648 (11th Cir. 2023); *Rydholm v. Equifax Info. Servs. LLC*, 44 F.4th 1105, 1108 (8th Cir. 2022). The alleged disclosure of information (whether from State Farm to Verisk or from Verisk to a third party, as alleged by Plaintiffs) also constitutes a cognizable intangible harm. *See In re Nickelodeon Consumer Priv. Litig.*, 827 F.3d 262, 274 (3d Cir. 2016) (stating that "the unlawful disclosure of legally protected information" is "concrete in the sense that it involves a clear de facto injury").

34.    "For an injury to be particularized, it 'must affect the plaintiff in a personal and individual way." *Cottrell*, 874 F.3d at 167 (quoting *Spokeo v. Robins*, 578 U.S. 330, 339 (2016)). Plaintiffs' alleged injuries are sufficiently particularized because the aforementioned harms are particular to each Plaintiff.

35.    The "actual or imminent" component of an injury-in-fact is stated in the "disjunctive." *Clemens v. ExecuPharm Inc.*, 48 F.4th 146, 152 (3d Cir. 2022). A litigant has standing not only when an injury actually occurs, but also "when the risk of harm becomes imminent." *Id.* Plaintiffs' tangible financial injuries (i.e., increased premiums) and intangible reputational harm and emotional distress have actually occurred according to their responses to discovery requests. Accordingly, the actual-or-imminent prong has been satisfied.

36.    To sufficiently demonstrate the second element of Article III standing, an "indirect causal relationship will suffice, provided that there is a fairly traceable connection between the alleged injury in fact and the alleged conduct of the defendant." *Finkelman v. Nat'l Football League*, 877 F.3d 504, 510 (3d Cir. 2017) (internal quotation marks and citation omitted). Here, Plaintiffs allege that the disclosure of their "Private Information" is traceable back to Verisk and State Farm.

37.     The redressability element "is established by 'showing that the injury will be redressed by a favorable decision.'" *Weichsel v. JP Morgan Chase Bank, N.A.*, 65 F.4th 105, 112 (3d Cir. 2023) (quoting *Const. Party of Pa. v. Aichele*, 757 F.3d 347, 368 (3d Cir. 2014)). The Supreme Court has held that "an award of nominal damages by itself can redress a past injury." *Uzuegbunam v. Preczewski*, 592 U.S. 279, 283 (2021). Any award of monetary or nominal damages, as well as any order that includes injunctive relief will redress Plaintiffs' injuries allegedly caused by the disclosure of their "Private Information."

38.     All of the deficiencies cited by the Court with respect to the FAC's allegations for the purpose of evaluating standing no longer exist in light of Plaintiffs' discovery responses and Verisk's independent investigation. Plaintiffs have admitted that they sent Nonpublic Personal Information, Individually Identifiable Health Information, and their Social Security Numbers to State Farm. Plaintiffs in turn have identified specific ISO File Numbers related to insurance claims made by Plaintiffs, thereby confirming that Verisk possesses some of their information. As part of its independent investigation in Plaintiffs' claims, Verisk has confirmed that State Farm has sent claim information to Verisk for inclusion in ISO ClaimSearch. Plaintiffs contend that the Verisk's maintenance of the Private Information associated with each ISO File Number—which they identified for the first time in discovery—is tortious because, in their view, it "is analogous to the publication of that information in a periodical – available to anyone willing to pay the price to access the database." SAC ¶ 24. Plaintiffs further allege that Verisk has further disclosed the information identified in their Specific Responses to Interrogatory No. 12 to third parties, thereby causing them the aforementioned tangible and intangible harms.

III.     **This Court Has Subject Matter Jurisdiction Pursuant to CAFA**

39.     CAFA vests federal courts with diversity jurisdiction over any (1) purported class action in which (2) "any member of a class of plaintiffs is a citizen of a state different from any defendant[,]" (3) the proposed class contains at least 100 members, and (4) the amount in controversy is at least $5,000,000 in the aggregate.  28 U.S.C. § 1332(d)(2), (d)(5).  All four requirements are satisfied.

**A.  The State Court Action is a "Class Action" Under CAFA.**

40.     CAFA defines a "class action" as "any civil action filed under rule 23 of the Federal Rules of Civil Procedure or similar State statute or rule of judicial procedure authorizing an action to be brought by 1 or more representative persons as a class action."  28 U.S.C. § 1332(d)(1)(B).

41.     Plaintiffs style their lawsuit as a "Class Action" and specifically allege that they "seek to represent a General Class and several subclasses." *See* SAC ¶ 40.  Plaintiffs seek "[a]n order certifying the Class(es) . . . and appointing Plaintiffs and their Counsel to represent the Class." *Id.* ¶ 84(a).

**B.  The Proposed Class Exceeds 100 Class Members.**

42.     The putative class exceeds 100 members because it includes "any person who initiated at least one insurance claim" regarding an Oklahoma-based insurance policy issued by State Farm and whose "Private Information" was "submitted" to Verisk for inclusion in ISO ClaimSearch.  SAC ¶ 41.

43.     Plaintiffs allege that "State Farm is the largest auto insurer in the State of Oklahoma, issuing *hundreds of thousands of policies each year* and handling *tens of thousands of claims.*"  SAC ¶ 44(a) (emphasis added).  Plaintiffs further allege "State Farm submits Private

Information to Verisk / ISO regarding *substantially all claims* under Oklahoma policies." *Id.* (emphasis added).

44.    Accordingly, based on Plaintiffs' allegations alone, this case meets the requirement under CAFA that the purported class consist of more than 100 members.

### C.  Minimum Diversity of Citizenship Exists.

45.    The minimum diversity of citizenship criteria under CAFA requires that any member of the putative class must be a citizen of a state different from that of any defendant. 28 U.S.C. § 1332(d)(2)(A).

46.    "Plaintiffs are all individual citizens of the State of Oklahoma." SAC ¶ 3.

47.    Defendants Verisk Analytics, Inc. and Insurance Services Office, Inc. are Delaware corporations with a principal place of business in New Jersey. Verisk and ISO are thus citizens of Delaware and New Jersey. *See* SAC ¶¶ 12-13.

48.    The forum defendant rule does not apply to removals pursuant to CAFA. *See* 28 U.S.C. § 1453(b). This case therefore satisfies the CAFA minimal diversity requirement that "any member" of the plaintiff class be a citizen of a state different from "any defendant."

### D.  The Amount in Controversy Exceeds $5,000,000.

49.    CAFA requires that the amount-in-controversy exceed $5,000,000 for the entire putative class in the aggregate, exclusive of interest and costs. *See* 28 U.S.C. § 1332(d)(2).

50.    Plaintiffs seek the "disgorgement of profits earned by Defendants through the sale and publication of their Private Information." SAC ¶ 46(d); *see also id.* ¶ 84(d) (requesting "disgorgement of the revenues wrongfully retained as a result of Defendant(s) wrongful conduct"). Plaintiffs allege that Verisk has generated "billions of dollars of revenue" based on "an enormous

number of profitable transactions" involving their Private Information. SAC ¶¶ 1, 66. The request to disgorge those profits demonstrates the amount in controversy is in excess of $5 million.

51.     Plaintiffs seek the following injunctive relief: (1) an order enjoining State Farm "from submitting further claim information to Verisk / ISO in connection with claims made under an Oklahoma insurance policy," (2) an order enjoining Verisk / ISO "from offering for sale or selling Private Information of the General Class," and (3) an order "remov[ing] Plaintiffs' and the Class members' records from Verisk / ISO's database." SAC ¶ 84.

52.     Plaintiffs have not alleged a specific dollar value tied to the various forms of injunctive relief they seek. For purposes of CAFA jurisdiction, the value of injunctive and declaratory relief is measured by "the value of the object of the litigation." *Columbia Gas Trans. Corp. v. Tarbuck*, 62 F.3d 538, 541 (3d Cir. 1995).

53.     State Farm has previously attested that "there were at least approximately 500,000 participants (claimant or insured) who filed a claim under an Oklahoma-based insurance policy issued by State Farm involving data that was potentially submitted to Verisk / ISO." No. 23-cv-1316, Notice of Removal, Ex. F, Mervis Decl., ECF No. 1-2. Assuming there is at least one data record associated with each Oklahoma-related claimant or insured with data provided by State Farm, the amount-in-controversy requirement is satisfied if each claimant or insured values the injunctive relief the Complaint seeks at $10.00 per record. *See Excel Pharm. Servs., LLC v. Liberty Mut. Ins. Co.,* 825 Fed. App'x 65, 68 (3d Cir. 2020) (rejecting argument that "there is no amount of money in controversy because [plaintiff] is merely seeking declaratory and injunctive relief" and holding that CAFA's $5 million amount-in-controversy requirement was satisfied by estimating costs associated with requested injunctive relief).

54.    In addition, Plaintiffs, on behalf of themselves and the alleged putative General Class, seek "an award of costs of suit and attorneys' fees allowable by law."  SAC. ¶ 84(g). Attorneys' fees are included in determining the amount in controversy for purposes of CAFA jurisdiction. *Verma v. 3001 Castor, Inc*., 937 F.3d 221, 227 (3d Cir. 2019) (holding that "attorneys' fees . . . do count for CAFA's amount-in-controversy threshold"). "A median recovery range for attorney's fees is approximately 30 percent."  *Neale v. Volvo Cars of N. Am., LLC*, 794 F.3d 353, 357 n.1 (3d Cir. 2015).  Thus, the inclusion of attorneys' fees would elevate the amount in controversy even further above the threshold CAFA jurisdictional requirement.

55.    Plaintiffs additionally seek "an award of at least nominal damages."  SAC ¶ 84. Plaintiffs "admit" that the "have suffered financial harm as a result of Verisk's alleged disclosure of [their] Private Information." Pls.' Unified Resp. to Verisk's RFA No. 13. By way of example, Plaintiffs "admit" that their "policy premiums were increased" "as a result of Verisk's alleged exposure of [their] Private Information." Pls.' Unified Resp. to Verisk's RFA No. 17.

56.    Because there were at least 500,000 participants in insurance claims made regarding an Oklahoma-based insurance policy issued by State Farm involving data that was potentially submitted to Verisk / ISO during the putative class period, even if each Oklahoma claimant and insured sought just $10 in either nominal damages or increased premiums from Defendants, which is plausible, the amount in controversy is satisfied.  28 U.S.C. § 1332(d)(6) ("In any class action, the claims of the individual class members shall be aggregated to determine whether the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs.").

**IV.    This Notice of Removal Complies with all Procedural Requirements**

57.    Verisk timely filed this Notice of Removal. 28 U.S.C. § 1446(b)(3) prescribes that "if [a] case stated by the initial pleading is not removable, a notice of removal may be filed within 30 days after receipt by the defendant, through service or otherwise, of a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable."

58.    The thirty-day clock "is triggered where 'the document [received by the defendant] informs the reader, to a substantial degree of specificity, [that] all the elements of federal jurisdiction are present.'" *McLaren v. UPS Store Inc*, 32 F.4th 232, 236 (3d Cir. 2022) (second alteration in original) (quoting *Foster v. Mut. Fire, Marine & Inland Ins. Co.*, 986 F.2d 48, 53 (3d Cir. 1993)).

59.    Neither the FAC nor the SAC informed Defendants "to a substantial degree of specificity" that Plaintiffs had Article III standing. *Id.*

60.    Based on the admissions and assertions made in Plaintiffs' Responses to Verisk's First Set of Requests for Admissions served on January 10, 2025, Verisk's timely removed this action within 30 days pursuant to 28 U.S.C. § 1446(b)(3).

61.    Separate from any paper received from Plaintiffs, Verisk has conducted an independent investigation in Plaintiffs' allegations pursuant to which Verisk concluded that subject matter jurisdiction exists. This investigation confirmed that State Farm transmitted insurance claim information to Verisk for inclusion in its ISO ClaimSearch database, which gives rise to Plaintiffs' claims sounding in breach of contract and invasion of privacy against State Farm and Verisk. Verisk's independent investigation did not trigger 28 U.S.C. § 1446(b)(3)'s 30-day clock. *See McLaren*, 32 F.4th at 238-40 ("The plain language of the statute focuses only on what a defendant

receives. Thus, the statute does not contemplate that the thirty-day clock would be triggered by information that the defendant already possesses or knows from its own records."). Thus, and in the alternative, this removal is timely because 28 U.S.C. § 1446(b) does not apply.

62.    Removals based on CAFA are not subject to the one-year outer deadline. *See* 28 U.S.C. § 1453(b); *McLaren*, 32 F.4th at 236. Nor is there any bar to successive removals. *See Brown v. Jevic*, 575 F.3d 322, 328 (3d Cir. 2009).

63.    The United States District Court for the District of New Jersey, Newark Vicinage, is the federal judicial district and division embracing the Superior Court of New Jersey, Law Division, Hudson County. Venue is thus proper.

64.    Verisk has attached a copy of all process, pleadings, and orders filed in the state court action. *See* Ex. B.

65.    Verisk has filed this Notice with this Court, will serve a copy of this Notice upon all parties, and will file a Notice of Filing of Notice of Removal with the Superior Court of New Jersey, Law Division.

66.    Verisk makes no admission of liability by this Notice and expressly reserves all defenses. Verisk reserves its right to amend this Notice of Removal.

**WHEREFORE**, Verisk hereby removes this action to this Court for further proceedings according to law.

Dated: February 7, 2025          Respectfully submitted,

<div style="margin-left:3em;">

*/s/ Matthew G. Wapner*
Matthew G. Wapner
Christopher A. Rojao
Ryan M. Savercool
**MCCARTER & ENGLISH, LLP**
Four Gateway Center
100 Mulberry Street
Newark, New Jersey 07102

</div>

ME1 52076540v.1

(973) 622-4444
mwapner@mccarter.com
crojao@mccarter.com
rsavercool@mccarter.com

Kimberly C. Metzger, Esq. (*pro hac vice* to be filed)
880 West Monon Green Blvd., Ste. 101
Carmel, IN 46032
(973) 622-4444
kmetzger@mccarter.com

*Attorneys for Defendants,*
*Verisk Analytics, Inc. d/b/a ISO ClaimSearch and*
*Insurance Services Office, Inc.*

ME1 52076540v.1

## <u>CERTIFICATE OF SERVICE</u>

I certify that on February 7, 2025, I electronically filed this Notice of Removal with the

Clerk of the Court using the CM/ECF system and sent a true and correct copy of the same by

electronic mail to the following address:

**JAVERBAUM WURGAFT HICKS
KHAN WIKSTROM AND SININS, P.C.**
Michael A. Galpern, Esq.
1000 Haddonfield-Berlin Road, Suite 203
Voorhees, NJ 08043
mgalpern@lawjw.com

**DeNITTIS OSEFCHEN PRINCE**
James A. Barry, Esquire
Five Greentree Centre Suite 410
525 Route 73 N.
Marlton, New Jersey 08053
JBarry@denittislaw.com

Monty L. Cain
Anthony M. Alfonso
**CAIN LAW OFFICE**
P.O. Box 892098
Oklahoma City, OK 73189
Telephone: (405) 759-7400
Facsimile: (405) 759-7424
E-mail: clo@cainlaw-okc.com

Edward L. White
**EDWARD L. WHITE, PC**
829 E. 33rd St.
Edmond, OK 73013
Telephone: (405) 810-8188
Facsimile: (405) 608-0971
E-mail: ed@edwhitelaw.com

**ALSTON & BIRD, LLP**
Steven L. Penaro (30182009)
90 Park Avenue
New York, NY 10016
Telephone: (212) 210-9400
steve.penaro@alston.com

ME1 52076540v.1

Cari Dawson
Tiffany Powers
1201 W Peachtree St NE #4900
Atlanta, GA 30309
(404) 881-7000
cari.dawson@alston.com
tiffany.powers@alston.com

*/s/ Matthew G. Wapner*

ME1 52076540v.1