NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| SHARON BYCKO, *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>STATE FARM MUTUAL AUTOMOBILE<br>INSURANCE COMPANY, *et al.*,<br><br>Defendants. | Civil Action No. 25-1103 (RK) (TJB)<br><br>**OPINION** |

**KIRSCH, District Judge**

      **THIS MATTER** comes before the Court upon Plaintiffs Sharon Bycko, Angela Killman-Anderson, Debra Lawless, Pamela S. Norton, and Jeremy Waller's (collectively, "Plaintiffs") Motion to Remand. (ECF No. 10; ECF No. 10-1, "Pl. Br.") Defendants Verisk Analytics, Inc. d/b/a ISO ClaimSearch and affiliated entity Insurance Service Office, Inc. (together, "Verisk") opposed the Motion (ECF No. 15, "Verisk Opp."), and Plaintiffs replied (ECF No. 16). Defendant State Farm Mutual Automobile Insurance Company ("State Farm") filed no briefs in support of or in opposition to the Motion. The Court has considered the parties' submissions and reaches its decision without oral argument pursuant to Federal Rule of Civil Procedure 78 and Local Civil Rule 78.1. For the reasons set forth below, Plaintiffs' Motion (ECF No. 10) is **GRANTED** and this matter is remanded to state court.

## I.      BACKGROUND

      Verisk's removal to this Court and Plaintiffs' instant Motion to Remand implicate some of the foundational legal principles underpinning this Court's circumscribed subject matter jurisdiction. This Court, like all federal courts, is one of limited jurisdiction, "possess[ing] only

that power authorized by Constitution and statute." *Erie Ins. Exch. By Stephenson v. Eri Indem. Co.*, 68 F.4th 815, 818 (3d Cir. 2023) (quoting *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994)). Therefore, a party seeking to invoke this Court's jurisdiction through removal—here, Verisk—bears the burden of proving that jurisdiction exists. *See Abels v. State Farm Fire & Cas. Co.*, 770 F.2d 26, 29 (3d Cir. 1995); *Martin v. Wal-Mart Stores, Inc.*, 709 F. Supp. 2d 345, 347 (D.N.J. 2010) ("The notice of removal is the defendant's opportunity to persuade the district court of its subject-matter jurisdiction.").

This marks the second time in as many years that this case has come before the Court on a notice of removal. This time, Defendant Verisk seeks to remove this action not based on Plaintiffs' pleading, but on a thin collection of "new" information—in the form of discovery responses and the fruits of an internal "investigation"—to establish that Plaintiffs have standing under Article III of the United States Constitution. This, by extension, Verisk argues, meets its burden that removal is proper. *See Finkelman v. Nat'l Football League*, 810 F.3d 187, 195 (3d Cir. 2016) ("Absent standing on the part of the named plaintiffs, we must dismiss a putative class action for lack of subject matter jurisdiction."). Verisk fails to meet this burden.

Plaintiffs are five residents of Oklahoma who broadly allege, as part of a putative class action, that they were either insured by Defendant State Farm, or filed insurance claims with State Farm, or both. (*See* ECF No. 1-1, "SAC" ¶¶ 2, 5, 6.) As a general matter, Plaintiffs state that when a person is injured in an automobile accident and submits a claim, their insurer (for example, State Farm) may request and review medical records. (*Id.* ¶ 25.) State Farm can also disclose this private medical information "to its affiliates for the same purposes." (*Id.* ¶ 35.) What State Farm *cannot* do, however, is disclose this private information to third parties who "retain and sell that information for purposes unrelated to adjusting the specific claim at issue." (*Id.* ¶ 35.) According

to Plaintiffs, State Farm "illegally provided" their "Private Information"[1] to Verisk, a "multinational data analytics and risk assessment firm," but neither notified Plaintiffs nor received their consent to do so. (*Id.* ¶ 1, 5–8, 13.) In turn, Plaintiffs allege Verisk has sold Plaintiffs' information to a wide variety of industries. (*Id.* ¶ 10.) To do so, Plaintiffs state generally that Verisk inputs Plaintiffs' Private Information into a database, analyzes that data, and regularly sells it to companies, governmental agencies, and individuals. (*Id.* ¶ 24.)

Plaintiffs allege that this unauthorized disclosure of Private Information can create "privacy harms," including the potential for additional inadvertent disclosure due to "negligent security." (*Id.* ¶ 38.) Indeed, throughout the Second Amended Complaint ("SAC") Plaintiffs cite a series of federal and Oklahoma state privacy laws that they allege Defendants violated. For example, Plaintiffs assert that when State Farm discloses Private Information for purposes beyond adjusting a claim, it violates Oklahoma's "nonpublic personal information law," which provides that "[n]o person shall disclose any nonpublic personal information contrary to the provisions" of the Gramm-Leach-Bliley Act of 1999. (SAC ¶ 32); *see* 36 Okla. Stat. Ann. §307.2(A). Despite these allegations, Plaintiffs do not bring claims under any privacy statute, nor does it appear that they could. *See West v. Sun Trust Mortg.*, No. 18-3778, 2018 WL 4635786, at *4 (E.D. Pa. Sept. 26,

---

[1] Plaintiffs define "Private Information" as "Non-public personal information," known as "NPPI," and "individually identifiable health information," known as "PHI." (SAC ¶¶ 19, 22, 27, 42a.) NPPI is "defined broadly to mean information that was '(i) provided by the consumer to a financial institution; (ii) resulting from any transaction with the consumer or any service performed for the consumer; or (iii) otherwise obtained by the financial institution.'" (*Id.* ¶ 19 (quoting 15 U.S.C. § 6809).) PHI is "health information collected from an individual, created or received by a health care provider, health plan, employer, or health care clearinghouse that relates to the 'physical or mental health or condition of an individual; the provision of health care to an individual; or the past, present or future payment for the provision of health care to an individual,' that identifies or may identify the individual." (*Id.* ¶ 27 (quoting 45 C.F.R. § 160.103 (defining "protected health information")).) The Court notes that Plaintiffs' definitions are taken from the Financial Services Modernization Act of 1999, Pub. L. 106-102, and regulations associated with the Heath Insurance Portability and Accountability Act; nonetheless, Plaintiffs' causes of action lie only in common law breach of contract and tort under state law.

2018) ("[T]he Gramm-Leach-Bliley Act does not provide a private cause of action." (citing *Dumire v. Morgan Stanley DW, Inc.*, 475 F.3d 956, 960 (8th Cir. 2007))); 36 Okla. Stat. Ann. § 307.2(C) ("Nothing in this section shall be construed to create a private right of action.").

Plaintiffs seek to represent a class consisting of "any person who initiated at least one insurance claim under a policy provided by an insurer licensed by the State of Oklahoma to sell the policy under which the claim was made, and regarding whom State Farm submitted Private Information to Verisk/ISO which Private Information was maintained in Verisk/ISO's database at least as recently as the start of the Class Period." (*Id.* ¶ 41.) The SAC does not bring any statutory causes of action, relying instead exclusively on two invasion of privacy claims—publicity given to private life and intrusion upon seclusion—as well as claims for breach of contract and breach of fiduciary duty. (*Id.* ¶¶ 52–80.) In addition to class certification, Plaintiffs seek a variety of equitable relief enjoining Defendants from selling their Private Information as well as "at least" nominal damages. (*Id.* ¶ 84.)

Although Plaintiffs describe at a high level the practice of information disclosure and the hypothetical harm this could inflict on both them and members of the putative class, the SAC is conspicuously void of any allegation that Defendants shared or sold any specific piece of Plaintiffs' information or that Plaintiffs were ever actually harmed by the alleged disclosure of their information.

### A. BYCKO I

Plaintiffs filed their initial Complaint in New Jersey Superior Court on January 20, 2023. *See Bycko et al. v. State Farm et al.*, MID-L-356-23. A few days later, Plaintiffs filed an Amended Complaint. (*See* ECF No. 10-2.) On March 8, 2023, Defendant State Farm removed the case to federal court, asserting that this Court had jurisdiction over the case pursuant to the Class Action

Fairness Act of 2005 ("CAFA"). CAFA confers original jurisdiction upon district courts in any class action where at least one plaintiff is diverse from any defendant and the amount in controversy exceeds $5 million. *See* 28 U.S.C. § 1332(d)(2); *Bycko v. State Farm Mut. Auto. Ins. Co.*, No. 23-1316 (D.N.J. 2023) ("*Bycko I*").[2] Despite Defendants' assertions in their Notice of Removal that this Court could exercise subject matter jurisdiction over the case, Defendants subsequently filed motions to dismiss the Amended Complaint, arguing that Plaintiffs lacked Article III standing to bring any cause of action in federal court. (*See generally Bycko I* ECF Nos. 20, 21.)[3] Plaintiffs, seemingly in agreement with Defendants' standing arguments, filed a motion to remand. (*See Bycko I* ECF No. 38.) On October 3, 2023, the Court at the parties' request heard oral argument on the pending motions. (*See Bycko I* ECF Nos. 55, 56.) At oral argument, Plaintiffs conceded, "Article III [standing] is not met." (*Bycko I* ECF No. 56 at 30:13–23; *see also id.* at 30:20–31:9 ("We believe that under the facts of this case, that State Farm is clear, and we actually agree with them for this purpose, that subject matter jurisdiction is lacking . . . .").)

On November 9, 2023, this Court remanded *Bycko I* to New Jersey state court, holding that "Plaintiffs lack Article III standing" and "the Court . . . lacks subject matter jurisdiction to consider this dispute." (*Bycko I* ECF No. 57, "*Bycko I* Op." at 9); *Bycko v. State Farm Mut. Auto. Ins. Co.*, No. 23-1316, 2023 WL 7411752, at *5 (D.N.J. Nov. 9, 2023). As the Court noted, the Amended Complaint "lack[ed] the basic foundational information necessary to establish that Plaintiffs ha[d] standing" including what Private Information was accessed, who accessed that information, and

---

[2] On May 15, 2023, *Bycko I* was reassigned to the Undersigned. (No. 23-1316, ECF No. 22.)

[3] References to "ECF No. ___" refer to documents filed in this present case. References to "*Bycko I* ECF No. ___" refer to documents filed in the previous case, *Bycko v. State Farm Mut. Auto. Ins. Co.*, No. 23-1316 (D.N.J.).

whether Plaintiffs sustained any purported harm "outside of speculative injuries that might materialize in the future." (*Bycko I* Op. at 4.)

Specifically, the Court addressed the Article III requirement that a plaintiff allege "injury-in-fact," and determined that the Amended Complaint contained no reference to any "concrete," "particularized," "actual," or "imminent" harm to Plaintiffs. (*Id.* at 12 (citing *Reilly v. Ceridian Corp.*, 664 F.3d 38, 41 (3d Cir. 2011).) Plaintiffs had failed to allege, *inter alia*, that their Private Information was "in fact disclosed to Verisk or any other third parties," and did not specify what information had allegedly been sold or "the parties to whom Verisk allegedly sold it." (*Id.* at 11–12.) As the Court noted, the Amended Complaint only made general reference to *risk* of disclosure of Plaintiffs' information and the possibility that State Farm's "data intrusions . . . *could lead* to further damage in the future when [Plaintiffs'] Private Information is later wrongfully accessed" by State Farm or other third parties. (*Id.* at 12 (quoting ECF No. 10-2 ¶¶ 33, 52, 62) (emphasis in original).) The Court found these threadbare allegations "that an unknown injury might possibly occur in the future[,]" "[did] not confer Article III standing." (*Id.* at 13 (citing *Reilly*, 664 F.3d at 42).)[4]

The Court also admonished Defendants for engaging in a practice that legal scholars have termed "fraudulent removal," wherein Defendants "remove[d] a case from state court and immediately mov[ed] to dismiss on the basis that the plaintiffs lack Article III standing." (*Id.* at 6–7); *see also* Zachary D. Clopton & Alexandra D. Lahav, *Fraudulent Removal*, 135 Harv. L. Rev. F. 87, 88, 103 (2021) ("The clearest example of fraudulent removal is when a defendant removes a case to federal court and plans to immediately argue that the federal court lacks subject matter jurisdiction. This self-incriminating motion shows that the defendant knew or should have known

---

[4] The Court also denied Defendants' Motions to Dismiss as moot. (*Bycko I* Op. at 9.)

that removal was improper."). The Court, despite its clear disapproval, denied Plaintiffs' request to assess fees related to the removal and gave Defendants "the benefit of the doubt." (*Bycko I* Op. at 16.)

### B. *BYCKO II*

Back in state court, Defendants again moved to dismiss, which that court denied on July 3, 2024. (*See* ECF No. 1-2 at 156–65.) Applying New Jersey's own standing doctrine, the Honorable Jane Weiner, J.S.C. held that Plaintiffs, in their Amended Complaint, had sufficiently met the underlying elements of their causes of action, and, accordingly, established standing.[5] (*Id.* at 157.) Judge Weiner noted that this Court's remand "was based on an analysis of federal law which is not binding upon [state] [c]ourt." (*Id.* at 158–59.) On July 22, 2024, Plaintiffs filed the SAC, now the operative pleading. (*See* SAC.) Defendants answered. (*Id.* at 228–49.) As Verisk explains in its opposition to the now pending Motion, the SAC "did not contain new allegations sufficient to confer Article III standing." (*See* Verisk Opp at 4.)[6] As described below, Verisk seeks to remove based on "a new and expanded record." (*Id.* at 10.)

Discovery began in state court in Fall 2024. Verisk served interrogatories, requests for admission ("RFA"), and requests for production on Plaintiffs, who initially returned "unified" responses (i.e., responses on behalf of all Plaintiffs as a collective) on January 10, 2025. (ECF No. 15-3, "Unified Resps.") Plaintiffs' individualized responses to interrogatories followed on January 24. (ECF No. 15-5, "Indiv. Resps.")

---

[5] New Jersey employs a "more liberal standard for standing" than Article III. *See Yuhasz v. WellCare Health Plans of New Jersey, Inc.*, No. 15-17110, 2020 WL 1616812, at *2 n.4 (D.N.J. Apr. 1, 2020).

[6] Indeed, appended to its opposition Verisk supplied a "redline" document comparing the Amended Complaint and SAC; the Court notes that the two pleadings are nearly identical. (*See* ECF No. 15-2.)

On February 7, 2025, with Plaintiffs' unified and individualized responses in hand, Verisk removed this case again.[7] The thrust of Verisk's argument for removal is that, through a series of discovery responses, Plaintiffs for the first time supplied a sufficient factual basis for Article III standing. (Verisk Opp. at 9–10.) Verisk thus argues it can meet its burden for removal. (*Id.*) According to Verisk, Plaintiffs confirmed through their discovery responses that their Private Information "was in fact disclosed to Verisk or any other third party," and that Plaintiffs had suffered both economic and emotional injury as a result. (*Id.* at 6–7.) Verisk also contends that it initiated its own investigation using Plaintiffs' discovery responses and was able to identify specific claims allegedly filed with State Farm "from which information was allegedly transmitted to Verisk." (*Id.* at 7–8 (citations omitted).) Notably, however, Verisk has not confirmed whether it then sent or sold this information to any third party.

Plaintiffs again moved to remand the case. (ECF No. 10.) Verisk opposed the Motion (ECF No. 15), and Plaintiffs replied (ECF No. 16). The Motion is now ripe for review.

## II.  **LEGAL STANDARD**

Any civil action over which a federal district court would have original jurisdiction may be removed from state court. 28 U.S.C. § 1441. "A party who urges jurisdiction on a federal court bears the burden of proving that jurisdiction exists." *Boyer v. Snap-on Tools Corp.*, 913 F.2d 108, 111 (3d Cir. 1990); *see also Frederico v. Home Depot*, 507 F.3d 188, 193 (3d Cir. 2007) ("The party asserting federal jurisdiction in a removal case bears the burden of showing, at all stages of the litigation, that the case is properly before the federal court").[8]

---

[7] State Farm's consent to removal is not required because actions brought under CAFA like this one "may be removed by any defendant without the consent of all defendants." 28 U.S.C. § 1453(b).

[8] Typically, the removal statute must be strictly construed against removal, creating a presumption in favor of remand. *See Sikirica v. Nationwide Ins. Co.*, 416 F.3d 214, 219 (3d Cir. 2005). However, in cases removed pursuant to CAFA, like this one, "no antiremoval presumption attends." *Dart Cherokee Basin*

Following removal, a plaintiff may move to remand the case if the removal was procedurally defective, or if the district court lacks subject matter jurisdiction over the case. 28 U.S.C. § 1447(c). "The failure to move to remand [based on a procedural defect] results in a waiver of the objection." *Farina v. Nokia, Inc.*, 625 F.3d 97, 114 (3d Cir. 2010). "A jurisdictional defect, on the other hand, may be raised at any time." *Id.* (citing *Ariel Land Owners, Inc. v. Dring*, 351 F.3d 611, 613 (3d Cir. 2003)).

## III.    DISCUSSION

At this juncture, the Court must decide both whether the *Bycko II* removal was procedurally proper—that is, whether Verisk's removal was timely and even theoretically permissible—and whether Verisk, in this second go-around, has met its burden to show that this Court has subject matter jurisdiction over the case. At the most basic level, the parties disagree as to what Verisk is even attempting to do here. Plaintiffs argue that Verisk seeks to either appeal or re-do their *Bycko I* removal attempt in contravention of federal statute. (Pl. Br. at 7–9.) Verisk acknowledges the prohibition against appeals or second removals and asserts that the *Bycko II* removal is a bona fide new effort based on a new set of facts, previously unknown to them. (Verisk Opp. at 9–10.) The Court unravels the cross-contentions below and concludes that even though Verisk's removal is not barred on timeliness or other procedural grounds, the new information it seeks to marshal does

---

*Operating Co., LLC v. Owens*, 574 U.S. 81, 89 (2014). Notwithstanding, the party seeking removal still bears the burden of establishing federal jurisdiction. *See Erie Ins. Exch. By Stephenson v. Erie Indemnity Co.*, 68 F.4th 815, 818 (3d Cir. 2023).

not establish that Plaintiffs have Article III standing. Accordingly, the Court is compelled to once again grant Plaintiffs' Motion and remand this case.

### A. THE *BYCKO II* REMOVAL NOTICE IS PROCEDURALLY PROPER

The Court's first task is to determine whether Verisk's *Bycko II* removal should be construed as either an appeal or a second removal requiring automatic remand. A court's order remanding a case "is not reviewable on appeal or otherwise." 28 U.S.C. § 1447(d). The Third Circuit has construed Section 1447(d) "as prohibiting appeals of remand orders as well as reviews by district courts of their own remands based on the same grounds as the initial removals." *Doe v. American Red Cross*, 14 F.3d 196, 199 (3d Cir. 1993). Once entered, a remand order cannot be vacated. *See Kircher v. Putnam Funds Tr.*, 547 U.S. 633, 642 (2006). However, "if subsequent pleadings or conduct by the parties or various other circumstances brings a case that was not previously removable within the removal jurisdiction of the federal courts, a second notice of removal is permissible." *In re Diet Drugs*, 282 F.3d 220, 232 n.8 (3d Cir. 2002) (quotation omitted).

That permissible second notice of removal, like any notice of removal, "may be filed within thirty days after receipt by the defendant, through service or otherwise, of a copy of an amended pleading, motion, order *or other paper* from which it may first be ascertained that the case is one which is or has become removable." 28 U.S.C. § 1446(b)(3) (emphasis added). Courts in this Circuit have defined "other paper" to "generally mean court-related documents produced by the plaintiff containing the information necessary to ascertain removability." *Kukla v. Wal-Mart Stores East, LP*, No. 17-4528, 2017 WL 6206261, at *3 (E.D. Pa. Dec. 8, 2017) (citing *Minissale v. State Farm Fire & Cas. Co.*, 988 F. Supp. 2d 472, 473 (E.D. Pa. 2013)). Although the Third Circuit has never explicitly defined "other paper," it has been broadly construed by district courts "to include

requests for admission, correspondence between counsel, and answers to interrogatories." *Minissale*, 988 F. Supp. 2d at 477–78 (citations omitted); *see also Brown v. Modell's PA II, Inc.*, No. 08-1528, 2008 WL 2600253, at *3 (E.D. Pa. July 1, 2008) (holding that requests for admission qualify as "other paper"); *Sayani v. Whole Foods Mkt.*, No. 18-17149, 2019 WL 4463369, at *3 (D.N.J. Sept. 18, 2019). Accordingly, "the Court must determine when Defendants first received 'an amended pleading, motion, or other paper' from which they could reasonably and intelligently conclude the case was removable." *Betancourth v. Mauldin*, No. 21-14168, 2021 WL 6049971, at *3 (D.N.J. Dec. 21, 2021).

Here, Plaintiffs argue that Verisk is improperly trying to appeal the remand in *Bycko I*. (Pl. Br. at 7–9.) However, as Verisk asserts in its removal notice, the basis of the *Bycko II* removal is *not* the Amended Complaint, or the SAC, or this Court's remand in *Bycko I*. Indeed, Verisk acknowledges that the SAC "did not contain new allegations sufficient to confer Article III standing," and thus Verisk did not seek to remove the case after Plaintiffs filed the SAC in July 2024. (Verisk Opp. at 4.) Instead, according to Verisk, the *Bycko II* removal is predicated on new factual admissions that only came to light once Plaintiffs responded to discovery requests. (*Id.* at 10.) In response, Plaintiffs contend that even if Verisk is not trying to appeal the *Bycko I* remand, all of the facts contained in Plaintiffs' discovery responses were previously incorporated into the Amended Complaint or the SAC, and therefore, Verisk is not in receipt of any *new* information that could give rise to this Court's jurisdiction, making the second remand untimely. (Pl. Br. at 10.)

1. <u>New Information</u>

The Court's present inquiry is whether the discovery responses on which Verisk bases its removal contain new information or whether the same facts are contained in the Amended

Complaint. If this purported "new" factual information "was readily available [to Verisk] when it filed its opposition to Plaintiffs' original motion to remand," then the *Bycko II* removal is simply an impermissible re-do. *See Allen v. Utiliquest, LLC*, No. 13-4466, 2014 WL 94337, at *3 (N.D. Cal. Jan. 9, 2014); *see also LaCaffinie v. Standard Fire Ins. Co.*, No. 10-207, 2010 WL 2207986, at *5 (W.D. Pa. May 28, 2010). If, however, the discovery responses contain information unbeknownst to Verisk before it received those responses in January 2025, then this remand is more than just a re-do.

In its Notice of Removal, Verisk argues that nine[9] of Plaintiffs' admissions newly demonstrate—beyond what was alleged in the Amended Complaint—that Plaintiffs have Article III standing to bring this case. (*See* ECF No. 1 ¶¶ 19–26.) Ignoring the question of standing for the present inquiry and solely focusing on whether any of the information Verisk presented is actually "new," the Court finds that there is sufficiently new information in Plaintiffs' unified response to RFA 12 to hypothetically support a new Notice of Removal. In its Notice of Removal, Verisk cites the unified response to RFA 12 wherein Plaintiffs "admit" that they suffered "embarrassment, humiliation, or emotional distress as a result of Verisk's alleged disclosure of [their] Private Information." (ECF No. 1 ¶ 21.) While threadbare, Plaintiffs' admission here arguably provides some "new" facts. Specifically, Plaintiffs assert for the first time that they "have regularly spent time scrutinizing bank statements, credit card records, and credit ratings" for signs of identity theft or other fraud; they are "worried" that their Private Information will be sold by Verisk; they are "deeply upset[]" by the knowledge that their Private Information is in the possession of

---

[9] Critically, the Court need not review all nine purported bases; instead, Plaintiffs must merely have provided *some* new information. Plaintiffs' unified response to RFA 12 "on its face or in combination with earlier-filed pleadings," could theoretically establish removability. *See McLaren v. UPS Store, Inc.*, 32 F.4th 232, 239 n.4 (3d Cir. 2022) (quoting *Walker v. Trailer Transit, Inc.*, 727 F.3d 819, 825 (7th Cir. 2013)).

unauthorized parties; and they are "distressed" because they think that their Private Information has been submitted by State Farm to Verisk "to punish them for filing a personal injury claim, even though the accident was not their fault." (Unified Resps. at 4 ¶ 12.) None of this information was alleged in the Amended Complaint. Accordingly, a Notice of Removal based at least in part on this information is not one that is simply an appeal or re-do of the *Bycko I* removal.[10]

2. Timeliness

Plaintiffs further assert that even if Verisk is allowed to bring a second removal, the *Bycko II* removal notice is untimely. (*See* Pl. Br. at 11–12.) A defendant must file a notice of removal "within 30 days after receipt by the defendant, through service or otherwise" of the paper "from which it may first be ascertained that the case is one which is or has become removable." 28 U.S.C. § 1446(b)(3). Since Verisk is relying on Plaintiffs' discovery responses as the "other paper" to support the conclusion that this case has "become removable," the 30-day clock began to run on the date that Verisk received Plaintiffs' discovery responses: January 10, 2025. (*See* ECF No. 1 ¶ 17.) The 30-day window for removal therefore ended on February 10, 2025.[11] Verisk removed this case on February 7, 2025, three days before the deadline. The removal notice was timely filed.

Accordingly, the Court concludes that Verisk's *Bycko II* removal is not procedurally barred.

---

[10] To be clear, the Court's determination that Verisk obtained new facts to hypothetically justify a second removal does not mean that the Court finds those same facts sufficiently establish Article III standing. An Article III analysis follows.

[11] Sunday, February 9, 2025—not Monday, February 10—was 30 days after January 10, 2025. However, because the deadline fell on a Sunday, the period "continue[d] to run until the end of the next day that is not a Saturday, Sunday, or legal holiday." *See* Fed. R. Civ. P. 6(a)(1)(C).

**B.  ARTICLE III STANDING**

Significant to the instant matter, the party asserting federal jurisdiction (here, Verisk) bears the burden of showing that removal is proper. *Frederico*, 507 F.3d at 193. "The defendant seeking to remove the matter bears the burden of showing that (1) federal subject matter jurisdiction exists, (2) removal was timely filed, and (3) removal was proper." *Farrell v. FedEx Ground Package Sys., Inc.*, 478 F. Supp. 3d 536, 540 (D.N.J. 2020); *Samuel-Bassett v. KIA Motors Am., Inc.*, 357 F.3d 392, 396 (3d Cir. 2004) ("The party asserting jurisdiction bears the burden of showing that at all stages of the litigation the case is properly before the federal court."); *Gottlieb v. JH Portfolio Debt Equities, LLC*, No. 22-1020, 2022 WL 17730891, at *3 (D.N.J. Sept. 22, 2022) (noting that "[d]efendants, having invoked federal jurisdiction through removal, bear the burden of establishing standing"), *report and recommendation adopted*, 2022 WL 22210129, at *1 (D.N.J. Oct. 7, 2022).

The new information marshalled by Verisk in an attempt to meet this burden must "affirmatively and unambiguously reveal[] that the case is or has become removable." *See McLaren*, 32 F.4th at 239 n.4 (quoting *Walker*, 727 F.3d at 821). Indeed, despite bringing the Motion to Remand, Plaintiffs do *not* bear any burden to show that this Court's jurisdiction is improper. *See Hoffman v. Metro Ins. & Annuity Co.*, No. 12-2303, 2012 WL 3185953, at *2 (D.N.J. Aug. 2, 2012) ("The burden is on the defendant to show removal is appropriate, and not on the plaintiff to show that removal is inappropriate.").

Here, Verisk has failed to show that Plaintiffs have Article III standing, and thus Verisk has failed to meet its burden to show that federal subject matter jurisdiction exists. *See Heaven v. Prime Hydration LLC*, 761 F. Supp. 3d 812, 816 (E.D. Pa. 2025) ("Article III standing is a part of subject-matter jurisdiction."). While Verisk may have cobbled together some purported "new" grounds for removal, when analyzed closely these grounds do not support Article III standing any

more than the grounds previously dismissed by this Court; at their essence, the purported new bases are rooted in surmise and conjecture. Because Verisk is unable to sufficiently demonstrate cognizable injuries-in-fact that are fairly traceable to Defendants, the Court is compelled to remand this case. *See Boyer*, 913 F.2d at 111.

    1.  <u>Legal Principles</u>

       With respect to the standing inquiry, the Court conducted a similar analysis in *Bycko I* and applies the same law here, accounting for new facts. Article III of the United States Constitution "confines the federal judicial power to the resolution of 'Cases' and 'Controversies.'" *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021) (quoting U.S. Const. art. III). "For there to be a case or controversy under Article III, the plaintiff must have a 'personal stake' in the case—in other words, standing." *Id.* (quoting *Raines,* 521 U.S. at 819). To establish standing, Plaintiffs must have "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992)). In a class action, "each named plaintiff must "personally" have standing independently of any claims brought on behalf of a putative class." *In re Am. Med. Collection Agency, Inc. Customer Data Sec. Breach Litig.*, No. 19-2904, 2021 WL 5937742, at *6 (D.N.J. Dec. 16, 2021) (citing *Lewis v. Casey*, 518 U.S. 343, 357 (1996)). "Absent Article III standing, a federal court does not have subject matter jurisdiction to address a plaintiff's claims." *Taliaferro v. Darby Twp. Zoning Bd.*, 458 F.3d 181, 188 (3d Cir. 2006).

       The first element of standing is "injury-in-fact." If a court cannot determine that a plaintiff has suffered an injury-in-fact, the standing inquiry ends, and the court lacks subject matter jurisdiction. *See Toll Bros. v. Twp. Of Readington*, 555 F.3d 131, 142 (3d Cir. 2009) ("[T]he injury-

in-fact element [of standing] is often determinative."); *see also, e.g., Katz v. Six Flags Great Adventure, LLC*, No. 18-116, 2018 WL 3831337, at *8 (D.N.J. Aug. 13, 2018) (concluding that plaintiff lacked standing after finding that he had not alleged a concrete injury-in-fact).

An injury-in-fact is "an invasion of a legally protected interest that is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical." *Reilly*, 664 F.3d at 41 (citing *Danvers Motor Co. v. Ford Motor Co.*, 432 F.3d 286, 290–91 (3d Cir. 2005)). A cognizable injury is "'distinct and palpable,' as distinguished from merely 'abstract.'" *Id.* (quoting *Whitmore v. Arkansas*, 495 U.S. 149, 158 (1990)). Accordingly, injury-in-fact requires more than "a bare procedural violation, divorced from any concrete harm." *Id.* An injury is particularized when it "affect[s] the plaintiff in a personal and individual way." *In re Am. Med. Collection Agency*, 2021 WL 5937742, at *6 (quoting *Lujan*, 504 U.S. at 561 n.1).

According to the Third Circuit, "[t]he second requirement of [Article] III standing, causation, requires that the alleged injury-in-fact is causally connected and traceable to the action of the defendant." *Edmonson v. Lincoln Nat. Life Ins. Co.*, 725 F.3d 406, 415 (3d Cir. 2013) (citation omitted). In other words, "a 'causal connection between' [Plaintiffs'] injuries and the conduct complained of." *In re Am. Med. Collection Agency*, 2021 WL 5937742, at *11 (quoting *Lujan*, 504 U.S. at 560–61). A federal court can only redress injury "that fairly can be traced to the challenged action of the defendant, and not injury that results from the independent action of some third party not before the court." *Enslin v. Coca-Cola Co.*, 136 F. Supp. 3d 654, 665 (E.D. Pa. 2015) (quoting *Simon v. E. Ky. Welfare Rights Org.*, 426 U.S. 26, 41–42 (1976)). "This requirement is 'akin to "but for" causation' and traceability can be found 'even where the conduct in question might not have been a proximate cause of the harm, due to intervening events.'" *In re Am. Med. Collection Agency*, 2021 WL 5937742, at *11 (quoting *Edmonson*, 725 F.3d at 418).

2. Application

Before addressing Verisk's "new" grounds for removal, the Court first observes that Plaintiffs' injuries as alleged in the SAC are murky at best, failing to draw any sort of connection between the alleged wrongful disclosure of information and some purported concrete harm, monetary or otherwise, experienced by Plaintiffs. Despite Verisk's contentions to the contrary, Plaintiffs' discovery responses do little to explain or substantiate who was harmed and by what. Nonetheless, for purposes of its standing analysis, the Court attempts to summarize the allegations based on the current record: First, Plaintiffs voluntarily disclosed their Private Information to State Farm in conjunction with insurance claims (*see* Unified Resps. at 3 ¶¶ 1–3)[12], and then State Farm provided that information to Verisk without Plaintiffs' permission and without notice to Plaintiffs (*see* SAC ¶¶ 5–7). It is not clear what Plaintiffs are alleging Verisk actually does with this Private Information once they receive it.

In the SAC, Plaintiffs broadly allege that Verisk either offers Plaintiffs' Private Information for sale to an unidentified "wide range of industries, not limited to insurance" (*id.* ¶¶ 9, 45, 55), provides reports to insurance adjusters about the wrong claimant (*id.* ¶ 36), aggregates and analyzes lots of data from State Farm and sells the "results" of that analysis to unidentified "companies, governmental agencies, and individuals around the world" (*id.* ¶ 24), or simply shares

---

[12] Even this simple admission is not so clear-cut. Although Plaintiffs' unified responses, which purport to apply to all named Plaintiffs equally, admit that each named Plaintiff gave their Private Information to State Farm, at least two individual interrogatories contradict this admission with mere speculation. Plaintiffs Bycko and Lawless, both answering an interrogatory about any Private Information they transmitted, write: "[Bycko/Lawless] *is uncertain but believes that she probably* provided her SSN, DOB, and *potentially* financial information in association with this claim." (*See* Indiv. Resps. at 2, 4 (emphasis added).)

the information in a non-secure fashion, which could lead to a data breach down the road (*id.* ¶ 38).

What's even less clear to the Court is how any of this impacts any individual Plaintiffs. The pleading sparsely and speculatively asserts that members of the putative general class "suffered at least nominal damages because their Private Information was publicly exposed, their legitimate claims were the improper bases for second-guessing subsequent claims that they might assert, their policy premiums were increased, and/or they were denied the full opportunity to individually profit from their Private Information kept and offered for sale by Verisk." (*Id.* ¶ 61.) Nowhere does the SAC allege that any particular Plaintiff experienced any of these possible harms.

The fruits of discovery relied on by Verisk purport to add only some meager specifics: Plaintiffs have spent time scrutinizing bank statements, credit card records, and credit ratings (Unified Resps. at 4 ¶ 12); feel "deeply upset[]" (*id.*); surmise that their information was submitted by State Farm to Verisk as some sort of "punitive action" for filing a personal injury claim in the first place (*id.*); believe that information from their past claims could be "used as a basis to deny future claims" (*id.* at 4 ¶ 13); "had difficulty obtaining insurance" (in the case of one Plaintiff) (Indiv. Resps. at 6); and were subjected to a negligible increase in yearly insurance premiums (in the case of three Plaintiffs) (*see* Verisk. Opp. at 8–9).

As a matter of law, Verisk does not meet its burden to establish standing by relying on these factual allegations, admissions, and conclusions. Most of the harm alleged is either not cognizable as a harm in the first place (*e.g.*, violation of a statute alone)[13], or is neither actual nor imminent. *See, e.g., Reilly*, 664 F.3d at 46 (finding no injury when plaintiffs monitored their

---

[13] In *Bycko I*, the Court explained that "Article III standing requires a concrete injury *even in the context of a statutory violation*." (*Bycko I* Op. at 11 (quoting *Spokeo*, 578 U.S. at 330) (emphasis added).) A statutory violation alone does not create an injury.

accounts because their own private information had not been misused or stolen). What's more, the few instances of a cognizable financial harm bare no clear causal relationship to any of Defendants' alleged missteps. *See, e.g.*, *In re Am. Med. Collection Agency*, 2021 WL 5937742. Verisk's attempts to demonstrate otherwise relies on information that was rejected by this Court two years ago, is inherently speculative, or supposes a connection so tenuous that it cannot establish the requisite traceability.

Verisk relies on three sources of information in hopes of tethering together sufficient facts to meet its removal burden and establish that Plaintiffs have Article III standing. *First*, the unified RFAs, a series of nineteen admissions answered on behalf of all named Plaintiffs. (*See* Unified Resps.) *Second*, the fruits of Verisk's own internal investigation, which purportedly leveraged claim information that Plaintiffs provided in their RFA responses to draw conclusions in the form of a chart. (*See* Verisk Opp. at 8–9.) And *third*, selected responses to individualized interrogatories seeking information about each Plaintiff's individualized circumstances. (*See* Indiv. Resps.)

Verisk contends that the new information contained in Plaintiffs' responses to discovery inquiries, coupled with Verisk's own internal investigation, "cure[s] the deficiencies identified in the initial remand order" and "satisfie[s] the injury-in-fact requirement." (Verisk Opp. at 5.) Plaintiffs, whose briefing focuses exclusively on the procedural hurdles of a second removal notice addressed above, make no argument as to whether the purportedly new facts properly establish standing. Nonetheless, the Court, which has an "independent obligation to examine" its own jurisdiction, *see FW/PBS, Inc. v. City of Dallas*, 493 U.S. 215, 231 (1990), now proceeds to analyze whether Verisk met its burden to establish Article III standing for Plaintiffs. *See Gottlieb*, 2022 WL 17730891, at *3 ("Defendants, having invoked federal jurisdiction through removal, bear the burden of establishing standing.").

a.  *Unified Requests for Admission (RFAs)*

Verisk relies in part on the below RFAs and accompanying responses in its attempt to establish that Plaintiffs suffered emotional and financial harm. The Court adds emphasis as relevant:

7.  Admit that, before January 20, 2023, You had confirmed or otherwise had personal knowledge that Verisk had disclosed your NPPI to a third party.

> Plaintiffs *lack information* sufficient to admit or deny this RFP, but, on information and belief,[14] assert it has happened.

8.  Admit that, before January 20, 2023, You had confirmed or otherwise had personal knowledge that Verisk had disclosed your IIHI[15] to a third party.

> Plaintiffs *lack information* sufficient to admit or deny this RFP, but, on information and belief, assert it has happened.

9.  Admit that, before January 20, 2023, You had confirmed or otherwise had personal knowledge that Verisk had disclosed your Social Security Number to a third party.

> Plaintiffs *lack information* sufficient to admit or deny this RFP, but, on information and belief, assert it has happened.

12.  Admit that You have suffered embarrassment, humiliation, or emotional distress as a result of Verisk's alleged disclosure of your Private Information.

> Admitted. Plaintiffs have regularly spent time scrutinizing bank statements, credit card records, and credit ratings for any signs of identity theft, fraud, or data breaches. Plaintiffs are *worried* that the personal information *will be* sold by Verisk / ISO or otherwise provided to insurance companies or other companies who will charge them more money for policies, deny them coverage, pay less on future claims, provide them credit on less favorable terms or not at all, or otherwise hurt them by wrongly using their own personal information to which they have no rights. Emotional Distress: The knowledge that their personal information is in the possession of unauthorized parties who are currently offering it for sale to

---

[14] Although Plaintiffs admit that "upon information and belief" their personal information was disclosed by Verisk to a third party, such an averment is permissible only "[w]here it can be shown" "with factual allegations" "that the requisite information is peculiarly within the defendant's knowledge or control." *See McDermott v. Clondalkin Grp., Inc.*, 649 F. App'x 263, 267–68 (3d Cir. 2016). Here, where Verisk bears the burden to establish removability (and purportedly would be the party with the relevant information alluded to by Plaintiffs), Verisk has not provided any information from its internal investigation or discovery that would confirm or refute Plaintiff's bare belief that Verisk has disclosed their information to third parties.

[15] IIHI is "Individually Identifiable Health Information" and "means the same thing as PHI as defined in the [SAC] ¶ 27[.]" (Unified Resps. at 2 ¶ 7.)

unknown persons is *deeply upsetting*. It *feels like* a violation of their privacy and personal security. This situation is especially distressing as Plaintiffs *suspect* that their Private Information was [sic] been submitted to Verisk / ISO by State Farm as a punitive action, to punish them for filing a personal injury claim, even though the accident was not their fault. Uncertainty and Anxiety: The *uncertainty* regarding who now possesses their personal data and what they might do with it is a constant source of anxiety and concern to Plaintiffs.

13. Admit that You have suffered financial harm as a result of Verisk's alleged disclosure of your Private Information.

> Admitted. Verisk *should have* offered to pay Plaintiffs for their personal information, and they lost the opportunity to profit when it failed to do so. Future Harm: Plaintiffs' information being possessed and offered for sale is then being used to increase their insurance rates or even to deny coverage. *Should* Plaintiffs assert future insurance claims, their justified and proper past claims *could* be used as a basis to deny future claims or to reduce any payment associated with future claims. These very harms are suffered every day by *insureds*, and Plaintiffs *believe* that they *may already* [sic] suffered such harms when they renewed my [sic] insurance after claims were reported to [sic] by State Farm to Verisk.

14. Admit that You have suffered "economic damages" as a result of Verisk's alleged disclosure of your Private Information, as alleged in Paragraph 50 of the Complaint.

> Admitted. See Resp. to RFA No. 12 and 13.

15. Admit that You have suffered "at least nominal damages" as a result of Verisk's alleged exposure of your Private Information, as alleged in Paragraphs 61 and 69 of the Complaint.

> Admitted. See Resp. to RFA No. 12 and 13.

(Unified Resps. at 3–5 (emphasis added).) The Court addresses the purported harms Verisk posits these RFA responses support in turn.

**Emotional Harm: RFA 12**

In its Notice of Removal, Verisk asserts that "Plaintiffs have admitted that they have suffered intangible harms that constitute 'concrete' injuries for Article III standing. Specifically, Plaintiffs admit that they have suffered 'embarrassment' and 'emotional distress.'" (ECF No. 1 ¶ 33.) A closer read of Plaintiffs' unified RFA responses reveal that these purported "emotional harm" admissions are inherently speculative, and thus do not satisfy the injury-in-fact requirement

of Article III standing such that this case has become "affirmatively and unambiguously . . . removable." *See McLaren*, 32 F.4th 239 at n.4 (quoting *Walker*, 727 F.3d at 821).

In RFA 12, Plaintiffs assert that they are "worried" that their Private Information will be sold to Verisk; that they "suspect" that their Private Information has been submitted to Verisk by State Farm as a punitive action; and that they feel "uncertainty" regarding "who now possesses their personal data." (Unified Resps. at 4 ¶ 12.) These emotional harms are insufficient to support an "injury-in-fact:" they are all based on the theoretical, speculative possibility—but not the "realistic danger"—that Defendants might sell Plaintiffs' information to other companies who, in turn, would then charge Plaintiffs more money for future insurance policies. *See Ellison v. Am. Bd. of Orthopaedic Surgery*, 11 F.4th 200, 205 (3d Cir. 2021) (quoting *N.J. Physicians, Inc. v. President of the United States*, 653 F.3d 234, 238 (3d Cir. 2011)); *see also New England Power Generators Ass'n, Inc. v. F.E.R.C.*, 707 F.3d 364, 369 (D.C. Cir. 2013) ("It would be a strange thing indeed if uncertainty were a sufficiently certain harm to constitute an injury in fact.").

Additionally, although Plaintiffs state that they have "spent time scrutinizing bank statements," such prophylactic measures, also based on surmise and speculation of possible future harm, do not demonstrate that Plaintiffs have incurred actual harm as a result of any action Defendants undertook. It only shows that Plaintiffs are concerned about the possibility or prospect of potential harm. *See Giordano v. Wachovia Secs., LLC*, No. 06-476, 2006 WL 2177036, at *5 (D.N.J. July 31, 2006) (explaining that time and money spent monitoring credit did not show a present injury or reasonably certain future injury "because the plaintiff's injuries were solely the result of a perceived risk of future injury") (collecting cases); *but see Galaria v. Nationwide Mut. Ins. Co.*, 663 F. App'x 384, 388–89 (6th Cir. 2016).

In *Galaria*, an informative-but-not-binding case, the Sixth Circuit found that plaintiffs who alleged that they expended time and money monitoring their credit, checking their bank statements, and modifying their financial accounts had established a "concrete injury suffered to mitigate an imminent harm." *Galaria*, 663 F. App'x at 389. But the facts of that case are distinguishable because in *Galaria*, the plaintiffs "already kn[e]w" that that they had lost control of their data, and that their data was "in the hands of ill-intentioned criminals." *See id.* at 388–89. In that case, the defendants too had recognized the legitimacy of the harm by providing plaintiffs free credit-monitoring and identity-theft protection for a full year. *Id.* The allegations here are in stark contrast: Plaintiffs do not know whether their information has been stolen by or disseminated to any nefarious third parties and have no reason to believe that their credit or bank account information will be affected in any way. Indeed, despite Plaintiffs' review and monitoring of their bank statements and credit reports no evidence has been brought to the Court's attention—in either a pleading or in the extensive briefing—that has revealed any evidence of identity theft, fraud, or data breach, let alone any wrongdoing tied to Defendants' conduct. Here, Verisk has not demonstrated that any of the allegations in RFA 12 establish an injury-in-fact sufficient for Verisk to meet its burden to establish the Article III standing.

### Financial Harm: RFA 13, 14, 15

Verisk also contends that Plaintiffs suffered financial harm sufficient to meet its removal burden. (*See* ECF No. 1 ¶¶ 30–31.) For clarity, the Court analyzes the financial harm RFAs in three parts: *first*, the first sentence of RFA 13; *second*, the sentences of RFA 13 that fall under the heading "future harm;" and *third*, RFAs 14 and 15. (*See* Unified Resps. at 4–5 ¶¶ 13–15.) As with the alleged emotional harms, Verisk's invocation of these claimed financial harms do not present

actual or imminent injury. Therefore, Verisk has not established the required basis for removability.

*First*, Verisk highlights that Plaintiffs "admitted" that they suffered financial harm, but Plaintiffs' own words reveal that their only present financial harm is that "Verisk *should have offered* to pay Plaintiffs for their personal information, and they lost the opportunity to profit when it failed to do so." (Unified Resps. at 4 ¶ 13 (emphasis added).) It is not clear from Plaintiffs' responses or allegations that "personal information of the type collected by [Defendants] has actual monetary value to Plaintiffs themselves, a fact necessary to Plaintiffs' theory of economic injury." *In re Nickelodeon Consumer Priv. Litig.*, Nos. 12-7829, 13-3755, 13-3729, 13-3757, 13-3731, 13-3756, 2014 WL 3012873, at *3 (D.N.J. July 2, 2014). Since there does not appear to be any market for Plaintiffs' Private Information—indeed, no party has alleged any—this theory of financial harm is overly "abstract or conjectural or hypothetical." *Id.* (quoting *Danvers Motor Co.*, 432 F.3d at 291).

*Second*, Plaintiffs describe the following "future harm":

> *Future Harm*: Plaintiffs' information being possessed and offered for sale is then being used to increase their insurance rates or even to deny coverage. *Should Plaintiffs assert future insurance claims*, their justified and proper past claims *could be* used as a basis to deny future claims or to reduce any payment associated with future claims. These very harms are suffered every day by insureds, and Plaintiffs *believe that they may have already suffered* such harms when they renewed [their] insurance after claims were reported [] by State Farm to Verisk.

(Unified Resps. at 4–5 ¶ 13 (emphasis added).) Like Plaintiffs' statements of emotional harm, Plaintiffs' admissions to RFA 13 are entirely speculative and do nothing to help Verisk meet its burden. The seemingly declarative statement that "Plaintiffs' information . . . *is* being used to increase their insurance rates or even deny coverage" (*id.*) is couched under a heading of "Future

Harm" and followed by explanations of potential, but certainly not actual or imminent consequences. The repeated use of words "should," "could," "believe," and "may" bespeak a contrived set of potential harms that, at this point, amount to nothing more than mere guesses cloaked as facts.

At its core, Plaintiffs assert that *if* they file future insurance claims, information from past claims *could be* used as a basis to deny those claims or reduce the payout of those claims. Taken together, these statements amount to only a "chain of possibilities," that rely on the outcome of future events—*first*, that any Plaintiff actually will file a second claim (which is in Plaintiffs' exclusive control) (*see* Unified Resps. at 4–5 ¶ 13 ("[s]hould Plaintiffs assert future insurance claims . . .")), and *second*, that Defendants will deny or fail to fully pay out that second claim (which is in Defendants' control, and Plaintiffs have not asserted that this is likely or even possible). *See In re Samsung Data Sec. Breach Litig.*, 761 F. Supp. 3d 781, 792 (D.N.J. 2025); *Reilly*, 664 F.3d at 43 (finding injury was overly speculative because the court could not "describe how the [plaintiffs] will be injured without beginning the explanation with the word 'if.'"). This assertion is grounded in rank speculation; it depends on possible future events that no one— including Verisk, the party with the burden—can predict.[16]

*Third*, Verisk points to Plaintiffs' admissions to RFA 14 and 15. (*See* ECF No. 1 ¶¶ 23, 30 (citing *Cottrell v. Alcon Lab'ys*, 874 F.3d 154, 163 (3d Cir. 2017) ("[W]here a plaintiff alleges financial harm, standing 'is often assumed without discussion'" (citation omitted)).) In the RFAs

---

[16] Plaintiffs attempt to support the assertion that they could experience future financial harm by stating that "[t]hese harms are suffered every day by insureds." (Unified Resps. at 4–5 ¶ 13.) But the fact that Plaintiffs' response invokes "insureds" more broadly—presumably members of the putative class but not any of the named Plaintiffs—removes this phrase from the Article III analysis. The Court will not look to the putative class members to establish standing on behalf of the class; standing must be personally established for "each named Plaintiff." *See In re Am. Med. Collection Agency*, 2021 WL 5937742, at *6 (quoting *Lujan*, 504 U.S. at 561 n.1); *see also Neale v. Volvo Cars of N. Am.*, 794 F.3d 353, 362 (3d Cir. 2015).

at issue, Verisk asks Plaintiffs to: (1) "Admit that You have suffered 'economic damages' as a result of Verisk's alleged disclosure of your Private Information" (Unified Resps. ¶ 14), and (2) "Admit that You have suffered 'at least nominal damages' as a result of Verisk's alleged exposure of your Private Information" (*Id.* ¶ 15). Plaintiffs produce identical responses to both requests: "Admitted. See Resp. to RFA No. 12 and 13." (*Id.* ¶¶ 14, 15.) The Court already analyzed Plaintiffs' responses to RFA 12 and 13 above and determined that the information therein could not meet Verisk's burden to establish Article III standing. Although Verisk is correct that there is no minimum financial injury for Article III standing purposes (*see* ECF No. 1 at 30), Plaintiffs' responses fail to provide a single fact as to what their actual financial harm is, where it comes from, or how it is connected to the allegations in the SAC. Indeed, Plaintiffs have not sought any damages, other than nominal damages and fees related to litigating this case, in the SAC. (*See, e.g.*, SAC at 25.)

Taken together, Verisk's reliance on RFAs 12, 13, 14, and 15 in its Notice of Removal does not sufficiently "persuade the court of its subject matter jurisdiction." *See Martin*, 709 F. Supp. 2d at 347. Verisk accordingly fails to meet its removal burden.

### b.  *Verisk's Investigation*

Having found no injuries-in-fact that apply to all Plaintiffs in the unified responses to Verisk's RFAs, the Court now turns to another potential basis for removal: Verisk's internal investigation based on Plaintiffs' provided claim numbers. *See Judon v. Travelers Prop. Cas. Co. of Am.*, 733 F.3d 495, 509 (3d Cir. 2014) (allowing removal of CAFA case to federal court "if new facts are discovered that establish jurisdiction"); *Portillo v. Nat'l Freight, Inc.*, 169 F. Supp. 3d at 595–96 (allowing defendants to remove "based upon its own information and/or investigation"). As Verisk states, although much of the information in the chart was based on documents already

in Defendants' possession, Defendants would not have known about the specific claims at issue without Plaintiffs' identification of their own claims in their discovery responses. (*See generally* Indiv. Resps.); *see also Portillo*, 169 F. Supp. 3d at 595–96.

For three of the five named Plaintiffs, Bycko, Norton, and Lawless, Verisk created a chart based on Plaintiffs' discovery responses and Defendant State Farm's collection of "renewal notices" that are purported to contain information about premiums charged by State Farm to Plaintiffs. (*See* Verisk Opp. at 7–8.) The chart is reproduced below:

| Named Plaintiff | SF Policy No.[17] | Premium Before Claim | Date of Claim | Premium After Claim |
|---|---|---|---|---|
| Pamela Norton | [omitted] | $394.71<br><br>Policy Period: June 1, 2021 to Dec. 1, 2021 | Claim in Aug. 2021<br><br>Information sent by SF to ISO in Sept. & Oct. 2021 | $406.07<br><br>Policy Period: Dec. 1, 2021 to June 1, 2022 |
| Sharon Bycko | [omitted] | $515.05<br><br>Policy Period: Dec. 12, 2022 to June 12, 2023 | Claim on Dec. 22, 2022<br><br>Information sent by SF to ISO on Dec. 28, 2022 | $535.72<br><br>Policy Period: June 12, 2023 to Dec. 12, 2023 |
| Debra Lawless | [omitted] | $217.85<br><br>Policy Period: Apr. 23, 2017 to Oct. 23, 2017 | Claim on Aug. 24, 2017<br><br>Information sent by SF to ISO on Aug. 25, 2017 | $222.84<br><br>Policy Period: Oct. 23, 2017 to Apr. 23, 2018 |

(Verisk Opp. at 8 (citations omitted)).

In its opposition to Plaintiffs' Motion,[18] Verisk asserts, via the chart, that "there is now information demonstrating that on at least three occasions, the premiums State Farm charged to

[17] Out of an abundance of caution, the Court has omitted Plaintiffs' State Farm policy numbers, which were filed under seal. (*See* ECF No. 15.)

[18] Although Verisk did not include this chart in their second Notice of Removal, "the Court can still consider this evidence in determining whether the Court has subject matter jurisdiction over this case." *Matos v.*

Plaintiffs Norton, Bycko, and Lawless under their respective policies increased after an alleged claim was made with State Farm and information from that claim was allegedly transmitted by State Farm to ISO ClaimSearch." (*Id.* at 8.) Verisk's analysis concludes that Norton's premium went up by approximately $12, Bycko's by $20, and Lawless' by $5. (*Id.*) The Court notes that the approximate year-to-year percentage increase is as follows: Norton: 3%; Bycko: 3.8%; and Lawless: 2.3%. Notwithstanding that the approximate 3% or less premium increases appear quite modest, the data provides at least some indicia of actual financial harm that three Plaintiffs purportedly experienced. *See Czyzewski v. Jevic Holding Corp.*, 580 U.S. 451, 464 (2017) ("For standing purposes, a loss of even a small amount of money is ordinarily an 'injury.'"). While it suffers from other deficiencies, the chart legally constitutes, *arguendo*, some element of an "actual" harm that is not speculative.

Nonetheless, Verisk cannot satisfy its burden to establish removability, because it cannot show that the purported "injuries" of these three Plaintiffs are "fairly traceable" to Defendants' conduct. Verisk briefed only the injury-in-fact issue and did not provide any briefing on the issue of traceability. Indeed, even though the Defendant has the burden to establish subject matter jurisdiction, *see Martin*, 709 F. Supp. 2d at 347 (describing the Notice of Removal as "defendant's opportunity to persuade the court of its subject-matter jurisdiction"), Verisk's Notice of Removal contains only one conclusory sentence about traceability: "Here, Plaintiffs allege that the disclosure of their 'Private Information' is traceable back to Verisk and State Farm." (ECF No. 1 ¶ 36.) Verisk has not shown that "but for" State Farm's disclosure to Verisk, Plaintiffs' insurance premiums would have either remained stagnant or decreased. *See Edmonson*, 725 F.3d at 418.

---

*Uber Technologies, Inc.*, No. 23-5038, 2024 WL 3238127, at *4 n.7 (E.D. Pa. June 28, 2024) (citing *Willingham v. Morgan*, 395 U.S. 402, 407 n.3 (1969)).

Additionally, although Verisk's chart states that State Farm sent information regarding Plaintiffs Bycko, Norton, and Lawless to Verisk, the causal chain ends there. The rest is mere speculation. Plaintiffs do not know what, if anything, Verisk did with this information, let alone whether they sold it to a third party. Plaintiffs explicitly state that they "*lack information sufficient*" to either admit or deny that their Personal Information was disclosed to a third party. (*See* Unified Resps. at 3-4 ¶¶ 7–9 (emphasis added).) Verisk—on whom the burden to establish removability lies—does not fill the void. (*See* Verisk Opp. at 8.) On this record, it is entirely unclear how Plaintiffs' injuries would "relate directly to the defendant's conduct." *See Salas v. Acuity-CHS, LLC*, No. 22-317, 2023 WL 2710180, at *6 (D. Del. Mar. 30, 2023); *see also Jenkins v. Assoc. Wholesale Grocers, Inc.*, No. 24-4039, 2025 WL 708574, at *7 (D. Kan. Mar. 5, 2025) ("[T]o survive a standing challenge, [a party] must allege that the PII disclosed . . . was misused or otherwise show a nonspeculative connection between this [disclosure] and the misuse.").[19]

Accordingly, traceability is not met. Verisk has not met its burden to establish that these three Plaintiffs have Article III standing, necessitating remand.

### c. Individual Interrogatory Responses

In discovery, Defendants also sought interrogatory responses from the individually named Plaintiffs, not only the named Plaintiffs as a unified group. Verisk contends that a singular Plaintiff, Waller, confirmed that he suffered a particularized, concrete injury. (*See* Verisk Opp. at 7.) The interrogatory response at issue, Individual Interrogatory 15, is reproduced below in full:

> **Int. No. 15:** Set forth all facts related to the "privacy harms" that You suffered as a result of Verisk sharing Your Private Information, as alleged in Paragraph 38 of the Second

---

[19] To be clear, Plaintiffs' failure to name as defendant any third party to whom Verisk sold private data has no bearing on the Court's traceability analysis. Defendants' actions need not be the "very last step in the chain of causation" to meet the traceability element. *See Bennett*, 520 U.S. at 168. Instead, the analysis relies on Plaintiffs' failure to allege—and Verisk's inability to show—that any defendant created injury by "determinative or coercive effect upon the action of someone else"—that is, by actually disclosing any of Plaintiffs' data to a third party. *See id.*

Amended Complaint.

> Plaintiff Waller recently experienced damage to his vehicle in the Fall of 2024 and, after he procured a new vehicle, he had a difficult time obtaining insurance, and he *believes* that the difficulty obtaining insurance was caused, *at least in part*, by the information Defendants made available about him via Verisk / ISO's databases.

(Indiv. Resps. at 6 (emphasis added).)

Here, Waller does not allege that he was *unable* to obtain insurance, what having "difficulty obtaining insurance" actually entailed, or whether this difficulty caused him any harm. He merely alleges he applied for a new insurance policy, and he had a hard time securing one. (*Id.*) To the extent that Waller was inconvenienced by the insurance-buying process, courts have held that administrative inconvenience does not create a legally protected interest. *See Kushner v. Illinois State Toll Highway Auth.*, 575 F. Supp. 2d 919, 923 (N.D. Ill. 2008). This vague surmise is patently deficient to establish injury-in-fact.

But even assuming *arguendo* that difficulty obtaining insurance could constitute an injury, Article III's traceability prong is nonetheless fatal to Verisk's reliance on Waller's allegation. Here, Verisk impermissibly asks the Court to speculate on the relationship between Waller's difficulty obtaining insurance and any alleged information disclosure.[20] Waller speculatively asserts he "believes" his difficulty in obtaining insurance was caused "at least in part" by information made available by Verisk. (*Id.*) Through this interrogatory response, Verisk fails to establish any sort of "but for" connection between the data Waller provided to State Farm and his subsequent injury in having difficulty securing insurance. *See In re Am. Medical Collection Agency*, 2021 WL 5937742, at *12.

---

[20] Further demonstrating the speculatory nature of Plaintiff Waller's interrogatory response, Plaintiffs admitted that they lacked information to even be sure Verisk disclosed their private data to third parties to begin with. (Unified Resps. at 3–4 ¶¶ 7–9.)

In sum, having reviewed Verisk's asserted bases for removal—each of which were predicated on claimed new facts asserted for the first time in Plaintiffs' discovery responses—Verisk has not satisfied its burden to establish that this Court has subject matter jurisdiction, and more specifically, that Plaintiffs have Article III standing to bring this case before a federal court. Verisk either fails to assert a "particularized concrete injury or harm to any Plaintiff" that is not "speculative" (*see Bycko I* Op. at 12), or Verisk fails to assert any alleged injury to Plaintiffs that is traceable to Defendants, *see Edmonson*, 725 F.3d at 415. Therefore, the Court must remand this case to New Jersey state court. *See Katz*, 2018 WL 3831337, at *9 ("In short, because Article III standing is lacking in this case, this Court lacks subject matter jurisdiction. And, because subject matter jurisdiction is lacking, remand is mandated under [the removal statute] and guiding precedent in this Circuit.").[21]

## C. AWARD OF COSTS AND FEES

Plaintiffs—as they did in *Bycko I*—petition the Court to award costs and fees. (Pl. Br. at 12–13.) Under 28 U.S.C. § 1447, "[a]n order remanding the case may require payment of just costs and actual expenses, including attorney fees, incurred as a result of the removal." 28 U.S.C. § 1447(c). An award of such fees is allowed only when "the removing party lacked an objectively reasonable basis for seeking removal." *Martin v. Franklin Cap. Corp.*, 546 U.S. 132, 141 (2005). A district court "has broad discretion and may be flexible in determining whether to require the

---

[21] Even absent the analysis hereinabove, the Court would be compelled to remand Plaintiffs' breach of contract claim to state court. In its prior Opinion, the Court held that Plaintiffs did not have standing to assert a breach of contract claim because the pleading contained "no allegations that State Farm breached any provision of the insurance policy, that the insurance policy governed the dispute in this case, or that Plaintiffs are suing over any policy provisions." (*Bycko I* Op. at 14.) Verisk has not attempted to cure this deficiency, and provided no information from discovery responses or their internal investigation that could demonstrate a contractual provision allegedly breached. Accordingly, that is an independent basis upon which to remand the breach of contract claim. *See Am. Capital Acquisition Partners LLC v. Fortigent LLC*, 595 F. App'x 113, 117 (3d Cir. 2014).

payment of fees." *Mints v. Educ. Testing Serv.*, 99 F.3d 1253, 1260 (3d Cir. 1996). The Court views Verisk's tactics here with disapproval, and notes that it appears that Defendants crafted requests for admission for the purpose of eliciting barely enough information from Plaintiffs to attempt to establish Article III standing. Nonetheless, the Court finds, in its broad discretion, that Verisk's bases for removal were not objectively unreasonable, and therefore declines to assess fees.

## **CONCLUSION**

For the foregoing reasons, the Court finds that Verisk has failed to meet its burden to show that this Court has subject matter jurisdiction. Accordingly, Plaintiffs' Motion to Remand is **GRANTED**. An appropriate Order accompanies this Opinion.

_____
ROBERT KIRSCH
UNITED STATES DISTRICT JUDGE

Dated: May 21, 2025